| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK | RETURN DATE**: 12/14/07**<br>TIME: **11:00 a.m.** |

-----------------------------------------------------------------x

In re:

        BETINA G. KOLOCH,                        Chapter 13
                                                              Case No.: 07-73919-dem

                            Debtor.

-----------------------------------------------------------------x

## OBJECTION TO TRUSTEE'S MOTION TO DISMISS
## and NOTICE OF OBJECTION TO PROOF OF CLAIM
## AND/OR IN THE ALTERNATIVE, AUTHORIZATION TO COMMENCE
## <u>A CHAPTER 13 CASE UPON NOTICE</u>

       LIDIA SWIATKOWSKA, a/k/a Lidia Swiatkowski, a party in interest in this chapter 13 case, by and through her attorneys, the Law Offices of Avrum J. Rosen, respectfully submits this as and for her Objection to the Trustee's Motion to Dismiss this chapter 13 (the "Objection"); as well as notice or her intent to object to the proof of claim filed by CitiMortgage, Inc. (the "Notice"); and lastly, in the alternative, her motion for authorization to commence a new chapter 13 case on her behalf on notice to parties (the "Alternative Relief Motion"); and states as follows:

      1.     Lidia Swiatkowska ("Swiatkowska") is the mother of Betina G. Koloch, the debtor (the "Debtor") herein. In addition, Swiatkowska is a co-obligor as to the mortgage executed in favor of CitiMortgage, Inc., ("Citi") on the property commonly referred to as 7 Park Lane Place, Massapequa, New York 11758 (the "Massapequa Property").

      2.     Swiatkowska has also been a debtor in various chapter 13 cases that include; 99-87493-sb; 01-81497-sb and 06-73253-sb. Each of these cases has been dismissed.

      3.     Further, Swiatkowska's husband. Michal Swiatkowskoi, has also been a debtor in several chapter 13 cases before the Court. Most recently, this Court issued an

Order dated August 8, 2007, wherein the Court dismissed his case with prejudice barring a refiling under any chapter of the code for a period of one (1) year. In addition, this Order further barred Swiatkowska from filing for that same period without first seeking authorization, upon notice, to re-file. A copy of the Court's Order is annexed hereto as Exhibit "A".

4. The Debtor, Swiatkowska and her husband, have all filed chapter 13 in a desperate attempt to save their family home from foreclosure. While at first blush it appears that these people have engaged in serial filings to frustrate the rights of a secured creditor, a closer examination of the facts reveals that the parties have not engaged in bad faith, but rather have been unable to obtain the relief necessary to have the secured creditor account for its actions and prove that it is entitled to the amounts that it continues to allege are due in the various proofs of claim it has filed in the various chapter 13 cases.

5. Addressing first the issue of the trustee's motion to dismiss this chapter 13 case; there are factors that mitigate against dismissal. First, your movant herein understands that the Debtor has failed to appear for a 341 notice. A review of the docket indicates that the Debtor commenced this chapter 13 case on October 4, 2007, and is not represented by counsel.

6. By letter dated November 8, 2007, the Debtor requested that the trustee adjourn the 341 meeting from the scheduled date of November 15, 2007 to a date approximately one (1) month later due to the fact that she was receiving treatment for breast cancer.

7. There was no response to the Debtor's request and the 341 meeting, pursuant to

docket entries, was carried to a date in late November, 2007 and now has been carried to a date in early January, 2008.

8. Thereafter, the trustee moved to dismiss this case alleging that certain mandatory disclosure was not provided by the Debtor. However, on or about December 10, 2007, the Debtor filed numerous documents that may well be responsive to the trustee's requests.

9. Understandably, a *pro se* debtor, undergoing treatment for breast cancer, is going to find herself with some difficulties complying with all of the requirements of both the Bankruptcy Code and the Local Rules for the Eastern District of New York. Clearly, she cannot be excused for her failures. However, under these circumstances, the movant believes that an extension of time to comply is not prejudicial to creditors in this case. In addition, the Court should note that the Debtor did remit her first plan payment to the trustee.

10. Considering this case in its entirety, the Court should note the issues regarding the proof of claim filed by the secured creditor, which is at the heart of this chapter 13 case, as well as the previous chapter 13 cases filed in relation to the Massapequa Property.

11. The Massapequa Property has a long and sordid history both in the Bankruptcy Court and the State Court of New York. Suffice it to say that the subject property was the subject of three foreclosure actions. First, in 1998, (the "1998 action") the secured creditor commenced an action against the Debtor, her mother and her father, alleging that they failed to make payments pursuant to the mortgage documents.

12. On or about December 13, 2001, the parties reached a consensual resolution which resolved the 1998 action. The mortgagors remitted the sum of $101,230.49 to Citi's counsel, Manton, Sweeney, Gallo, Reich & Bolz, LLP. A copy of the receipt of payment is annexed hereto as Exhibit "B". Moreover, the stipulation of settlement provided in paragraph "1" that the "[D]efendants shall reinstate the Mortgage arrears totaling $101,230.49 by tendering payment as follows. . ."

13. Further, paragraph "10" provided that "[I]t is expressly understood and agreed that the intent of the aforementioned payment plan is to bring the loan to a current status provided the defendants have complied with the payments required to be made herein in a timely manner . . ." There is no question that the payments were tendered in a timely manner as evidenced by Citi's counsel's receipt of the full amount due pursuant to the stipulation.

14. From January 2002 through May 2002, or even June 2002, things appeared to go according to plan; although there may be some question as to the principal balance due after the reinstatement of the mortgage pursuant to the stipulation of settlement. Nevertheless, the mortgagors remitted their monthly payment in the amount of $3,231.00 as evidenced by the Citi's receipts annexed hereto as Exhibit "C".

15. Then, on June 19, 2002, the mortgagors received a letter from Citi rejecting their monthly payment indicating that the amount was not sufficient to cover the amount due of $4,753.28. The letter failed to explain how the payment amount had been recalculated or why it had gone up. It simply indicated that additional monies were due. A copy of the June 19, 2002, letter is annexed hereto as Exhibit

"D".

16. On June 20, 2002, one day after the June 19, 2002, letter, Citi again contacted the mortgagors. This time, Citi advised the mortgagors that there payment was late and a $50.28 was imposed. A copy of the June 20, 2002, letter is annexed hereto as Exhibit "E".

17. To make matters worse and to further confuse the issues, Citi sent the mortgagors a letter dated June 25, 2002, indicating that they were current through May 1, 2002, and were due for June 1, 2002. The letter failed to make any mention whatsoever of an increased amount due for June 1, 2002. A copy of the June 25, 2002, letter is annexed hereto as Exhibit "F".

18. The computer printout of the loan history provided by Citi, which extends only through May 1, 2002, indicates that the mortgagee received a payment of $3,231 on May 14, 2002, and a payment of $3,231.00 on June 18, 2002. It also indicates that on July 11, 2002, it reversed the payments in the amount of $6,462.00. All of these transactions show a due date of May 1, 2002. A copy of the history is annexed hereto as Exhibit "G".

19. More importantly, as of May 1, 2002, the escrow balance indicated a negative balance of $9,898.51. Subsequently, on a posting date of July 18, 2002, the history indicates that the mortgagee made a tax payment of $2,051.00 which increased the negative balance in the escrow account to $11,153.52.

20. On a posting date of October 18, 2002, the history indicates that the mortgagee made a tax payment of $3,778.41 which increased the negative balance in the escrow account to $14,931.93.

21. On a posting date of January 24, 2003, the history indicates that the mortgagee made a tax payment in the amount of $2,433.18 which increased the negative balance in the escrow account to $17,365.11.

22. On a posting date of April 16, 2003, the history indicates that the mortgagee made a tax payment in the amount of $3,778.40 which increased the negative balance in the escrow account to $21,143.51.

23. On a posting date of July 21, 2003, the history indicates that the mortgagee made a tax payment in the amount of $2,331.06 which increased the negative balance in the escrow account to $23,474.56.

24. On a posting date of October 22, 2003, the history indicates that the mortgagee made a tax payment in the amount of $3,918.50 which increased the negative balance in the escrow account to $27,327.55.

25. Each and every one of these entries listed above were indicated to be due on May 1, 2002. Assuming *argunedo* that such tax payments were due, which the mortgagors deny, how is it possible that each payment was due and payable on May 1, 2002? It seems impossible on its face.

26. Moreover, again assuming *arguendo,* by Citi's own admissions through its correspondence to the mortgagors, they were <u>current</u> through May, 2002, with the next payment due on June 1, 2002. In addition, if each payment was due on May 1, 2002, then presumably Citi would have increased the mortgagors' payments effective with the May, 2002, payment to cure the escrow arrears that swelled to

over $27,000.00.[1]

27. Again, according to the payment history, effective May, 2002, Citi referred the file to its attorneys for foreclosure. However, according to Citi's own admissions, the mortgagors were not in default in May, 2002.

28. Despite all of this confusion, Citi's counsel commenced yet another foreclosure action against the mortgagors. This action, filed on November 21, 2002, (the "2002 Action") alleged that the mortgagors had defaulted "under the terms of the Note and Mortgage by omitting and failing to make monthly payments of <u>principal and interest</u> due from <u>June 1, 2002</u> through date".

29. The 2002 Action was so poorly prepared (despite the fact that it was a verified complaint in State Court) that it clearly failed to allege that the mortgagors failed to remit the escrow amounts due, which it appears, may have accounted for the only default.[2] The interest rate on the note had not changed as this was not an

---

[1] In an effort to place Citi on notice of the objection to the proof of claim it has filed in this chapter 13 case and has previously filed in the movant's chapter 13 cases, a search of the Nassau County, Town of Oyster Bay Tax records as to the Massapequa property, indicates that the taxes are approximately $10,000.00 for calendar 2007. However, a review of the payment history provided by Citi clearly indicates that in calendar 1998, Citi remitted approximately $13, 971 in tax payments; in calendar 1999, Citi remitted approximately $16,379.00 in tax payments and in calendar 2002, Citi remitted approximately $24,193.00 in tax payments. During calendar years 2000 and 2001, while in foreclosure, it appears that Citi did not remit any real estate taxes. However, as the mortgagors cured the alleged default pursuant to the stipulation entered into in 2001, wherein they remitted the sum of $101,230.49 to Citi, and Citi applied on December 17, 2001, to payments due from October 1, 1999 through and including December 1, 2001, for a reduction in interest, principal and escrow, in the total amount of $100,168.49, we cannot be certain how the escrow balance swelled to a negative balance of over $27,000.00. Clearly, upon entering into the stipulation of settlement, Citi charged the mortgagors as if the taxes had been remitted by Citi during the period of foreclosure as they collected escrow amounts due.

[2] The mortgagors had remitted the payments that they had always remitted under the Note and Mortgage. The letters of June 19 and 20, 2002, indicated that the payment remitted did not meet the required payment of over $4,700.00. Thus, these mortgagors should never have been

    adjustable note.  The interest was and continues to be eleven (11) percent.

    Moreover, Citi further alleged that interest was due from May 1, 2002, yet the

    complaint alleged that the default did not occur until June 1, 2002.

30.  For reasons unknown at this time, Citi commenced a <u>third</u> foreclosure action

    against the mortgagors in early January, 2003 (the "2003 Action").  That action

    was for all intents and purposes the same action commenced in 2002.  It contained

    the same allegations that the mortgagors failed to pay principal and interest

    payments, with no mention whatsoever of escrow amounts.  While it asserts in

    paragraph "10" of the complaint that "the Mortgage obligates the Defendants,

    <u>inter alia</u>, to pay, on a monthly basis, to plaintiff, at plaintiff's option, an amount

    equal to 1/12 of the annual taxes, assessments, ground rents, and hazard and

    mortgage insurance premiums to become due in connection with Premises

    pursuant to the Mortgage", there is simply no allegation that the mortgagors

    defaulted by not remitting such amounts, if any, due and owing.[3]

31.  Despite the fact that Citi never alleged a default in escrow payments in the 2002

    Action nor the 2003 Action, Citi's counsel stated in paragraph "4" of the

    affirmation of Rashel M. Mehlman, Esq., filed in case no. 06-73252, that "[T]he

    debtor and co-obligors defaulted under the Note and Mortgage on or about June 1,

    2002, by failing to make the monthly payments for <u>principal, interest and escrow</u>

---

placed in foreclosure in 2002.  Had they not been mistakenly placed in foreclosure, there would not have been a need to commence another bankruptcy case.

 [3] A payoff statement attached as an exhibit to Citi's opposition papers filed in an earlier chapter 13 case of the movant, alleges that the escrow advances exceeded $62,000.00.  A copy of the statement is annexed hereto as Exhibit "H".

deposits". This statement in counsel's affirmation is and was patently false as Citi never alleged that the mortgagors defaulted by failing to remit escrow payments. A copy of the affirmation is annexed hereto as Exhibit "I".

32. Moreover, in paragraph "11" of her affirmation, counsel stated, "[M]eanwhile, CitiMortgage counties to advance the Property taxes which are in excess of $30,000.00". This presents two very serious questions. First, the payment history showed that earlier, Citi failed to remit real estate taxes, despite the fact that the bank received the amounts from the mortgagors. In addition, based upon the Town Of Oyster Bay records, the real estate taxes for the property do not even approach such an amount. Annexed hereto as Exhibit "J" is a copy of the printout from the Town of Oyster Bay.

33. All of Citi's actions prejudiced the Debtor herein, as well as the movant and her husband. They had no ability to deal with Citi or to get the bank's attention. Rather, Citi's attorneys simply filed foreclosure actions and ignored their adversaries' pleas for help. Thus, they turned to the only available option, the Bankruptcy Court. Swiatowska did not attempt to engage in serial filing in bad faith or in an attempt to abuse the process. On the contrary, she sought out the only available option where she was able to at least attempt to level the playing field. However, for whatever reasons, she was unable to get the relief that she was entitled to.

34. Clearly, she recognizes that in order to object to the proof of claim filed by Citi, proper notice is required. The claim objection is not before the Court at this time. However, she offers this background and explanation in an attempt to put the

      entire matter before the Court. In other words, there are myriad reasons for this Court not to dismiss the Debtor's instant petition. They have been enumerated herein. The Debtor and the movant should be afforded the opportunity to properly object to the Citi claim, in order that either the Debtor, or if need be, the movant, may propose a confirmable plan that cures the arrears that are actually due Citi.[4]

35. This brings the movant to her final point. In the event that this Court determines that the chapter 13 trustee's motion to dismiss the instant case must be granted, then in the alternative, the movant wishes the Court to treat this objection as and for her motion for authority to commence a new chapter 13 case. The reasons for such relief are enumerated herein. Recognizing that the Court granted certain relief in its dismissal order as to the movant's husband, such that neither he nor she may commence another case without first moving for authority to do so, it is respectfully stated that the parties entitled to notice of such request have been served with this objection. The chapter 13 trustee, the secured creditor and the Office of the United States Trustee have been provided with this objection. In the event that the Court determines to treat this as a motion for authorization, it may be appropriate for the Court to fix a date for a hearing on such request. By so doing, it would provide the requisite notice period to allow interested parties to object to such relief, if such parties determine objections are appropriate.

---

[4] The movant does not allege, nor has she ever alleged, that there are in fact defaults under the Note and Mortgage. She readily admits that there are substantial arrears due Citi for unpaid pre-petition mortgage payments. However, she adamantly objects to the amounts as calculated by Citi to be due and owing. A copy of the Citi proof of claim is annexed hereto as Exhibit "K".

36. The movant believes that under the circumstances and as a result of the actions taken by Citi, she should be entitled to commence another chapter 13 case.

WHEREFORE, it is respectfully requested that this Honorable Court deny the trustee's motion in its entirety and allow the Debtor to appear at an adjourned 341 meeting; allow the movant and or the Debtor, to object to the Citi proof of claim**;** and/or in the alternative to authorize the movant to commence a new chapter 13 case, together with such other and further relief that this Court deems just and proper under the facts and circumstances herein.

Dated: Huntington, New York
December 12, 2007

                                        The Law Offices of Avrum J. Rosen
                                        Attorneys for Lidia Swiatowska

BY:    S/Avrum J. Rosen
         Avrum J. Rosen (AJR4016)
         Fred S. Kantrow (FK3499)
         38 New Street
         Huntington, New York 11743
         631 423 8527
         fkantrow@avrumrosenlaw.com